IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| WORLD MEDIA ALLIANCE LABEL INC.<br>       (Florida corporation)<br><br>       Petitioner/Creditor,<br><br>v.<br><br>ELLO ENTERTAINMENT GROUP, LLC.,<br>       (Wyoming company)<br><br>       Respondent/Debtor | ACTION No. 1:2023-MC-……….<br><br><br><br><br>JAMS Arbitration matter<br>Reference Number: 5460000304 |

**NOTICE OF VERIFIED PETITION**

**AND VERIFIED PETITION FOR AN ORDER CONFIRMING AN ARBITRAL AWARD**

COMES NOW, Petitioner WORLD MEDIA ALLIANCE LABEL INC. (a Florida corporation), according to 9 U.S.C.A. §9, and other law, files its Notice of Application and Application for an Order Confirming an Arbitral Award, entered by the arbitrator sitting in Miami Dade County against Respondent ELLO ENTERTAINMENT GROUP, LLC., (a Wyoming company).  In support thereof, the Claimant states as follows:

1.      JURISDICTIONAL STATEMENT.   Petitioner WORLD MEDIA ALLIANCE LABEL INC. (also WMA) is a Florida corporation, State docket 18000058641, FEI/EIN Number 83-1113407.  WMA was incorporated on July 3, 2018.  WMA's principal and registered address is 16711 Collins Ave #507, Sunny Isles Beach, FL 33160.  WMA's executives are George Sergeev, the President and Chief Executive Officer, and Ivan Sergeev, Vice President.

2.       Respondent ELLO ENTERTAINMENT GROUP, LLC (ELLO), is a Wyoming company, State Number 2020-000922748.  ELLO was incorporated on 14 June 2020.  ELLO's address is 13603 Marina Pointe Dr., Unit B427, Marina Del Rey, CA 90292.  ELLO's registered address in Wyoming is Legalinc Corporate Services Inc., 5830 E 2nd St Ste 8, Casper, WY, 82609.

3.       The Federal Arbitration Act, 9 U.S.C.A. § 9 confers original jurisdiction on the District Court of the United States in and for the district within which such award was made unless the parties have designated a particular court in the arbitration agreement.  The Agreement does not designate a district court to confirm the arbitration award.  See Exhibit I, Agreement between the parties concerning the arbitration clause.  In this case, the award was made in Miami-Dade County, within the U.S. District Court for the Southern District of Florida.

4.       The parties at bar entered Strategic Partnership Agreement dated November 25/26, 2021, and stipulated that the matters presented in this arbitration are arbitrable.  The arbitration tribunal independently found that all matters before the panel were arbitrable.  At all times, the tribunal afforded the parties proper notice of all hearings and provided them adequate opportunities to be heard by the panel.

5.       The parties selected the arbiter.  The arbitration proceedings were presided by The Hon. Scott J. Silverman.  JAMS Mediator, Arbitrator, and Referee/Special Master, a retired judge, formally of the 11th Judicial Circuit, Florida.

6.       On August 23, 2022, the Claimant filed with JAMS its "Statement of Claim" [from now on "Statement"].  The Statement set forth a single count against Respondent, which alleged Respondent breached the parties' contract: Strategic Partnership Agreement.  The Statement of Claim set forth the relief sought by the Claimant from the Respondent:

a.       Repayment of the initial four hundred-thousand-dollar ($400,000.00);

b.      Fifty percent (50%) of all such profits earned after the repayment of the initial four hundred-thousand-dollar ($400,000.00) amount;

c.      Compensatory and consequential damages in an amount to be determined at arbitration;

d.      An amount to be determined at arbitration, but including all fees and costs that Claimant has incurred and will continue to incur in this matter and the above matters, including attorneys' fees, costs, arbitrator fees and costs, and expenses; and

e.      Such other and further relief as the Arbitrator may deem just and proper.

7.      In its Report of Preliminary Hearing and Scheduling Order, dated October 31, 2022, the arbitration tribunal wrote, "…The parties stipulate to the entry of a bare final award." Accordingly, the tribunal will enter a bare award, which is equivalent to a jury verdict.

8.      According to the parties' stipulation as to the form of the award, the tribunal found that the Claimant, WMA, met its burden of proof, and the Respondent, ELLO, breached the parties' contract, resulting in the following damages to the Claimant.  Accordingly, the tribunal entered its Interim Award in favor of WMA and against ELLO.

9.      On November 24, 2022, The Respondent, through its president, Val Segal, filed its Answer and Affirmative Defenses, which denied the allegations against it by the Claimant. Initially, it appeared that The Respondent alleged a counterclaim against the Claimant for breach of the Agreement.  However, The Respondent unambiguously stated during the final hearing that it did not file a counterclaim and has made no such claim.  The Respondent's position is supported by the tribunal's Order on The Respondent's Request to Determine Responsibility for Arbitration Fee Deposit dated January 18, 2023, in which the tribunal wrote in paragraph 16, "Claimant is the only party, for now, seeking affirmative relief, and therefore bears the sole responsibility of paying the deposits (arbitrator fees and expenses) as determined by JAMS, in accordant with the Agreement and Rule 31."

10.     The arbitration tribunal received sworn testimony from George Sergeev, Ivan Sergeev, Andrey Razin, and Val Segal.  The tribunal also received, reviewed, and considered the

post-final hearing submissions filed with JAMS by the Claimant and the Respondent. Each submission was dated February 28, 2023.

11.     The arbitration tribunal found that the Respondent entered into a legally valid and enforceable contract with the Claimant, that the Respondent materially breached its obligations to the Claimant under the contract, and that the Claimant substantially performed its part of the contract. As a result of the Respondent's breach, the Claimant incurred damages for which it is entitled to be compensated.

12.     Upon the Agreement clause on the arbitration, exhibited under Exhibit 1, the proceedings resulted in the Interim Award on March 3, 2023, see Exhibit 2. The arbitration decision awarded the Claimant the award of $400,000. On or about April 5, 2023, The Claimant filed its Motion for Attorneys' Fees, Costs, and Arbitration Fees, with JAMS. The tribunal read and reviewed the motion and its attachments. After that, on April 7, 2023, the tribunal conducted a hearing.

13.     On April 12, 2023, the arbitration Final Award was entered, adding $70.18 in costs to the award. Consequently, the final award was for the amount of $400,070.18. The Final Award was entered and has not been disturbed by any application to the JAMS to reconsider that decision. There is no question that the arbiter, the former judge of the 11th Judicial Circuit of Florida, retired, is a highly experienced, qualified, and respected arbiter with dozens of years of experience as a judge and otherwise in the legal profession.

14.     The Federal Arbitration Act (FAA) "declared a national policy favoring arbitration," preempting state laws limiting or excluding arbitration as a valid remedy. *Mastrobuono v. Shearson Lehman Hutton, Inc*., 514 U.S. 52, 56 (1995). The relevant portion of the FAA provides that "the United States court in and for the district wherein the award was made

may make an order vacating the award upon the application of any party to the arbitration ... where the arbitrators exceeded their powers[.]" 9 U.S.C. § 10.  The grounds for vacating or modifying an arbitration award in § 10 are the only ways to contest an arbitration award: *Hall Street* Associates, *LLC v. Mattel, Inc.,* 552 U.S. 576, 589 (2008).  If the district court does hold the award should be vacated, the Court may order a new arbitration.  9 U.S.C. § 10.

15.     Congress enacted the FAA in 1925 to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647.  See *Bautista v. Star Cruises*, 396 F.3d 1289, 1297 (11th Cir. 2005).

16.     "It is well settled that judicial review of an arbitration award is narrowly limited[,]" Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1190 (11th Cir. 1995) (citations omitted), and "is among the narrowest known to the law." AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (citation omitted).  Indeed, the FAA "expresses a presumption that arbitration awards will be confirmed." Aviles v. Charles Schwab & Co., 435 F. App'x 824, 827 (11th Cir. 2011) (citation omitted).

17.     The present Petition conforms with Section § 13 of the FAA, 'Papers filed with order on motions; judgment; docketing; force and effect; enforcement' ("The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk: (a) The Agreement; the selection or appointment, if any, of an additional arbitrator or umpire; and each written extension of the time, if any, within which to make the award.  (b) The award.  (c) Each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award

and a copy of each order of the Court upon such an application.  The judgment shall be docketed as if it was rendered in an action."

18.     WMA makes a disclaimer that the enforcement of an arbitration award does not cover or address its other causes of action against Respondent ELLO, its principal(s), and affiliates, which causes of action will be asserted separately.

**WHEREFORE**, Petitioner respectfully petitions to confirm the Final Arbitration Award, entered on April 12, 2023, submitted in this matter.

Dated: May 27, 2023

Respectfully submitted,

_____/signed George Lambert/
George Lambert, Esq.
The Lambert Law Firm
FL bar 1022697
421 Poinciana Drive, #1422,
Sunny Isles Beach, FL 33160;
Email: office.law.323@gmail.com
Tel.  (305) 938 0600
Attorney for Peitioner World Media Alliance Label Inc.

**VERIFICATION OF PETITION**

I, George Sergeev, President of World Media Alliance Label, Inc., state under the penalty of perjury under the laws of the United States that the preceding Petition is true and correct to the best of my knowledge.  I also state that Exhibits attached herewith are true and correct copies of the arbitration JAMS Arbitration Docket Number: 5460000304.

Dated: May 27, 2023

_____
George Sergeev

# EXHIBIT  1

## STRATEGIC PARTNERSHIP AGREEMENT

**THIS STRATEGIC PARTNERSHIP AGREEMENT** (this "Agreement") formalizes the intention of World Media Alliance ("WMA") and Ello Entertainment Group ,LLC ("Ello") to pursue a business venture through the use of WMA assets and  (the "Venture"). This Agreement shall become effective on the last signature date as set forth below (the "Effective Date").

## TERMS

1.      **Transaction Documents.** The Parties agree to cooperate in good faith to do all things necessary under this Agreement and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this Agreement and transactions contemplated herein.

2.      **Venture Structure**. WMA and Partner (collectively, the "Partners") shall structure the Venture as set forth herein:

    a. *Participation*

        i.   The Partners shall be the sole participants of the Venture.

        ii.  After repayment of the initial Loan (as defined below), the partners shall participate 50/50 in the venture's profits.

        iii. No additional interest in the Venture shall be authorized without the unanimous consent of the Partners.

    b. *Loan Funds and other Contributions*

        i.   WMA shall provide the Venture with audio and visual assets, and provide a loan to Ello of $400,000, to be funded within fourteen (14) days of the execution of this Agreement.  WMA will maintain full ownership and control in all of its intellectual property, no matter how used in the Venture.

        ii.  Ello shall provide full access and ability to manage its Content Management System ("CMS") platform; including, all YouTube content, channels, videos, sound recordings, website, and art tracks.

        iii. No Partner shall be required to submit any additional contributions or loans without their consent.

    c. *Management*

        i.   Ello shall continue the management of the assets from the CMS platform.  Ello shall provide full access and credentials to WMA for the purpose of providing WMA full access to the CMS for YouTube. Ello shall also assume responsibility for the management of their team members.

        ii.  WMA shall continue the management of its assets.  WMA shall also assume responsibility for the management of their team members.

    d. *Other Business*. The Partners are expressly permitted to have investments and other business relationships, ventures, agreements, or arrangements with entities engaged in the business of the Venture other than through the Venture and any subsidiaries or affiliates of the Venture.

    e. *Transfer of Interests*

        i. No Partner (a "Selling Partner") shall sell, assign or transfer, or offer to sell, assign or transfer or otherwise dispose (collectively "Sell") of all or any part of such Partner's interest in the Venture (whether voluntarily or involuntarily) without the prior written consent of the other Partner.

        ii. If a Selling Partner desires to Sell any or all of its interest in the Venture to a third-party purchaser, then it shall first make an offer to sell all such interest to the other current Partner on no less favorable terms.

    f. *Decision Making*. All decisions other than management, including without limitation the sale of the company shall require unanimous consent.

3. **Profit Share**.

    a. Until the initial $400,000 loan by WMA is fully repaid, WMA shall receive 100% of the profits collected from the Venture.  After WMA has recuperated its initial $400,000, the Partners will split profits equally on an indefinite going forward basis.

4. **Modification**. The parties agree that the Venture and any other terms described herein may be modified only upon the written consent of all parties

5. **Confidentiality**. Each party shall hold any and all non-public information with respect to the other party acquired in connection with the negotiations and due diligence of this Venture, whether written or oral, in confidence until such time as such party is legally required to disclose such information. Each party will use such information only for purposes reasonably related to the transactions contemplated by this Agreement. In the event the parties do not consummate this Venture, each party, upon request, shall use all reasonable efforts to destroy or return to the other party all documents (and reproductions thereof) received from the other party. The parties may not, without prior written consent of all parties hereto, make any public statement or otherwise disclose or allow disclosure with respect to the existence of this Agreement, negotiation, or possible investment.

6. **Costs**. Each of the parties shall bear their own costs and expenses in the negotiation and documentation of the transactions contemplated herein. Any actions taken or costs incurred prior to the execution of the agreement are at each individual party's sole risk, cost and expense

7. **Competing Activities**. Notwithstanding any duty otherwise existing at law or in equity,

a. The Partners and their respective affiliates, partners, members, shareholders, directors, managers, officers or employees, shall not be expressly or impliedly restricted or prohibited solely by virtue of this Agreement or the relationships created hereby from engaging in other activities or business ventures of any kind or character whatsoever and

b. The Partners and their respective affiliates, partners, members, shareholders, directors, managers, officers and employees, shall have the right to conduct, or to possess a direct or indirect ownership interest in, activities and business ventures of every type and description, including activities and business ventures in direct competition with the Venture.

c. This Section does not eliminate the obligation of good faith and fair dealing, and does not eliminate the principles of law and equity including the common law principles relating to the fiduciary duties of loyalty and care.

8. **Governing Law; Arbitration**.

a. The validity, interpretation, performance, and enforcement of this Agreement will be governed by the laws of Florida.

b. Except with respect to equitable remedies such as injunctions and disputes related to the ownership and protection of Proprietary Information, the Parties agree that any dispute, claim, or controversy arising hereunder or relating in any way to this Agreement, shall be settled by binding arbitration in Miami-Dade County, Florida in accordance with the commercial arbitration rules of Judicial Arbitration and Mediation Services ("JAMS"), with judgment upon the award rendered by the arbitrator to be entered in a court of competent jurisdiction. For all disputes over equitable remedies related to the ownership and protection of Proprietary Information, the Parties agree to the exclusive jurisdiction of the federal or state courts sitting in Miami-Dade County, Florida for any such dispute, claim, or controversy arising hereunder or relating in any way to this Agreement.

c. The Party filing a claim or counterclaim in the arbitration proceeding shall pay the deposit(s) determined by JAMS with respect to such claim or counterclaim. All other costs associated with the arbitration and imposed by JAMS shall be paid as determined by the arbitrator(s) and, in absence of such determination, equally by each Party to the arbitration. In addition, unless the arbitrator awards payment of reasonable attorneys' and other fees to a Party, each Party to the arbitration shall be responsible for its own attorneys' fees and other professional fees incurred in connection with the arbitration. Determinations of the arbitrator will be final and binding upon the Parties to the arbitration, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction, or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the case may be. The arbitrator shall apply the

substantive law of the State of Florida, without giving effect to its conflict of laws rules.

d. Prior to arbitration of any dispute the parties agree to mediate the dispute. Mediation is a condition precedent to arbitration. However, if the parties fail to mediate within 10 days of notice of the dispute, they may proceed to arbitration.

e. THE ARBITRATOR SHALL NOT BE AUTHORIZED TO AWARD INDIRECT, PUNITIVE, SPECIAL, CONSEQUENTIAL, OR OTHER SIMILAR DAMAGES ARISING OUT OF ANY BREACH OF THIS AGREEMENT OR THE OBLIGATIONS OF A PARTY UNDER THIS AGREEMENT.

f. EACH PARTY HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTER-CLAIM (WHETHER IN CONTRACT, STATUTE, EQUITY, TORT (SUCH AS NEGLIGENCE)), OR OTHERWISE RELATING TO THIS AGREEMENT

**IN WITNESS WHEREOF** the Parties have caused this Agreement to be signed by their duly authorized representatives identified below and on the dates listed below.

**World Media Alliance**

By: _George Jerem_

Name: _George Jerm_

Title: _VP_

Date: _11.26.2021_

**Ello Entertainment Group, LLC**

By: _President_

Name: _Val Bessu_

Title: _President_

Date: _11/26/21_

OLIVERA ANASTASOV
Notary Public - State of Florida
Commission # HH 190417
My Comm. Expires Oct 24, 2025

11-26-21

OLIVERA ANASTASOV
Notary Public - State of Florida
Commission # HH 190417
My Comm. Expires Oct 24, 2025

11/26/21



# Domestic Wire Transfer

| | | |
|---|---|---|
| **Initiator:** Olivera Anastasov | | **Date:** 11/30/2021 |
| **Initiator's Ph #*:** (305) 956-5770 | | **Reference Number:** 1015 |

**Approver's Name :** Iryna Zakalyuk

**Wire Status:** Pending Branch Approval

| **Wire Amount** | **Customer's Bank Code** | **Branch Bank Code** | **Branch #** |
|---|---|---|---|
| $400,000.00 | 004-TD BANK N.A. | 004-TD BANK N.A. | 981 |

**Same Day Deposit?***

No

| **Wire Type** | | **Account Type** |
|---|---|---|
| Wire Transfer | ☐ Check if Federal Tax Payment | Business |

## ORIGINATOR

| **Customer Name*** | **Customer Account Number*** |
|---|---|
| World Media Alliance Label Inc | 4354232997 |

| **Beneficiary Name*** | **Beneficiary Account Number*** |
|---|---|
| Val Segal | 813543029 |

| **Beneficiary Address 1*** | **Beneficiary Address 2*** |
|---|---|
| 13603 MARINA POINTE DR | UNIT B427 |

| **Beneficiary City*** | **Beneficiary State / Zip Code** |
|---|---|
| MARINA DEL REY | CA 90292 |

| **ABA Number*** | **Receiving Bank Name*** |
|---|---|
| 322271627 | JPMORGAN CHASE BANK, NA |

## SPECIAL INSTRUCTIONS

**Further Credit Bank Name**

**Further Credit Comments (Max 140 Characters)**

CONTRACT ELLO ENTERTAINMENT GROUP LLC
NOVEMBER 26TH 2021

| **CUSTOMER REQUESTING** | **APPROVED BY** |
|---|---|
| (Signature) | (Signature) |
| World Media Alliance Label Inc | |

**Notices & Disclaimers:** Placeholder for disclaimer

# EXHIBIT  2

**JAMS**

**Reference Number: 5460000304**

**WORLD MEDIA ALLIANCE
LABEL, INC,**

          **Claimant,**

**vs.**

**ELLO ENTERTAINMENT
GROUP, LLC.,**

          **Respondent.**

_____/

## **INTERIM AWARD**

THE PARTIES SELECTED the undersigned arbitrator pursuant to their Strategic Partnership Agreement dated November 25/26, 2021 [hereinafter the "Agreement" or "Contract"] and stipulated that the matters presented in this arbitration are arbitrable.  The tribunal independently finds that all matters before the panel were arbitrable.  At all times, the tribunal afforded the parties proper notice of all hearings and provided them adequate opportunities to be heard by the panel.

At the final hearing, the tribunal took, reviewed, and considered the evidence presented by the parties, as well as the exhibits the introduced.[1]  Based upon the allegations

---

[1] The tribunal received sworn testimony from George Sergeev, Ivan Sergeev, Andrey Razin, and Val Segal.  The tribunal also received, reviewed, and considered the post final hearing submissions filed with JAMS by Claimant and Respondent. Each submission was dated February 28, 2023.

and proofs made, the tribunal FINDS and AWARDS in this INTERIM AWARD as follows.[2]

## Proceedings through and Including the Final Hearing

On or about August 23, 2022, Claimant filed with JAMS its "Statement of Claim" [hereinafter "Statement"].   The Statement set forth a single count against Respondent which alleged Respondent breached the parties' contract, to wit: Strategic Partnership Agreement.   The Statement of Claim set forth the relief sought by Claimant from Respondent:

    a.  Repayment of the initial four hundred-thousand-dollar ($400,000.00);

    b.  Fifty percent (50%) of all such profits earned after the repayment of the initial four hundred-thousand-dollar ($400,000.00) amount;

    c.  Compensatory and consequential damages in an amount to be determined at arbitration;

    d.  An amount to be determined at arbitration, but including all fees and costs that Claimant has incurred and will continue to incur in this matter and the above matters, including attorneys' fees, costs, arbitrator fees and costs, and expenses; and

    e.  Such other and further relief as the Arbitrator may deem just and proper.

On or about November 24, 2022, Respondent, through its president, Val Segal, filed its Answer and Affirmative Defenses which denied the allegations made against it by Claimant.  Initially, it appeared that Respondent alleged a counterclaim against Claimant for breach of the Agreement.  However, Respondent unambiguously stated during the final hearing that it did not file a counterclaim and has made no such claim.  Respondent's position is supported by the tribunal's Order on Respondent's Request to Determine Responsibility for Arbitration Fee Deposit dated January 18, 2023, in which the tribunal wrote in paragraph 16, "Claimant is the only party, for now, seeking affirmative relief, and therefore bears the sole responsibility of paying the deposits (arbitrator fees and expenses) as determined by JAMS, in accordant with the Agreement and Rule 31." Had Respondent

---

[2] Any matter raised by the parties in their submissions that is not addressed in this Interim Award is deemed to be without merit.

sought affirmative relief in the form of a counterclaim, which it has not, it would have been responsible for half the arbitration fees and expenses.

## Conclusions

Claimant has the burden of proving Respondent breached the parties' contract by the greater weight of the evidence, also referred to as the preponderance of the evidence. Respondent has the same burden with respect to proving its affirmative defenses.

In its Report of Preliminary Hearing and Scheduling Order No. 1, dated October 31, 2022, the tribunal wrote in paragraph 15, "…The parties stipulate to the entry of a bare final award." Accordingly, the tribunal will enter a bare award, which is the equivalent to a jury verdict.

Pursuant to the parties' stipulation as to the form of the award, the tribunal finds the claimant, World Media Alliance Label, Inc., met its burden of proof and the respondent, Ello Entertainment Group, LLC., breached the parties' contract which resulted in the following damages to Claimant.[3] Accordingly, the tribunal enters this Interim Award in favor of World Media Alliance Label, Inc. and against Ello Entertainment Group, LLC. Based upon the categories of damages demanded, and proven, the arbitrator finds Claimant shall recover the following amounts that will reasonably and fairly compensate Claimant pursuant to its pending claim:

| **Damages awardable to Claimant:** | **$ 400,000.00**[4] |
| --- | --- |

[3] The tribunal finds that Respondent entered into a legally valid and enforceable contract with Claimant; that Respondent materially breached its obligations to Claimant under the contract; and that Claimant substantially performed its part of the contract. As a result of Respondent's breach, Claimant incurred legal damages for which it is entitled to be compensated. Respondent failed to meet its burden of proof with respect to its Affirmative Defenses.

[4] Claimant acknowledges in its Post-Hearing Submission that… "the exact amount of profits in excess of $400,000 is unknown." Claimant, nevertheless, states, "This should not stop the arbitrator in awarding WMA damages of 50% of the profits, which appear to be an additional $50,000 on top of the loan repayment."

| Attorney's Fees: | (Reserved: to be determined by the tribunal) |
| --- | --- |
| | |
| Costs, Arbitrator fees and Expenses: | (Reserved: to be determined by the tribunal) |

**Total Interim Damages awardable to
Claimant and against Respondent**     **$    400,000.00**

Except for determining attorneys' fees, costs, arbitrator fees, and expenses for which this tribunal is reserving jurisdiction, this Interim Award resolves all other claims between the parties submitted for decisions in this proceeding.[5]

DONE and ORDERED this 3rd day of March 2023.

Scott J. Silverman
Arbitrator

Copies furnished to:

All parties

---

The tribunal declines to award Claimant damages for lost profits.  Claimant failed to adequately establish profits for a reasonable time anterior to the breach.  See, *A&P Bakery Supply & Equipment Company v. Hawatmeh*, 388 So.2d 1071, 1072 (Fla. 3d DCA 1980). Claimant further failed to present competent proof that established that the amounts claimed for lost profits were reasonably certain.  *U.S. Home Corp. v. Suncoast Utilities, Inc.*, 454 So.2d 601, 605 (Fla. 2d DCA 1984).  As such, the amounts sought by Claimant are speculative and not compensable.  See, *Sostchin v. Doll Enterprises, Inc.*, 847 So.2d 1123, 1128 (Fla. 3d DCA 2003).

[5] The tribunal will address entitlement and/or amounts, if any, in a subsequent hearing to be scheduled by the parties with the tribunal's case manager.

# EXHIBIT 3

**JAMS**

**Reference Number: 5460000304**

Case Manager: Salvador Salcedo Guzman

**WORLD MEDIA ALLIANCE LABEL, INC.,**

**Claimant,**

**vs.**

**ELLO ENTERTAINMENT GROUP, LLC.,**

**Respondent.**
_____/

**<u>FINAL AWARD</u>**

The Undersigned Arbitrator was designated in accordance with the agreement entered into by the above-named parties. All parties had the opportunity to present pertinent evidence and legal argument in this matter before the tribunal.

The tribunal issued its Interim Award on March 3, 2023, which is incorporated herein. On or about April 5, 2023, Claimant filed with JAMS its Motion for Attorneys' Fees, Costs, and Arbitration Fees.  The tribunal read and reviewed the motion and its attachments.  Thereafter, on Friday, April 7, 2023, the tribunal conducted a hearing on Claimant's motion and afforded the parties, through their counsel and/or representative, the opportunity to present oral argument on the issues raised therein.  Having considered the motion, as well as arguments for and against it, the tribunal finds as follows with respect to the matters reserved in the Interim Award:

       1.  <u>**Attorney's Fees**</u>

In its Interim Award of March 3, 2023, in favor of Claimant, the tribunal expressly reserved jurisdiction to determine costs, arbitrator fees and expenses.[1]  Claimant contends that it is entitled to an award of attorneys' fees pursuant to paragraph 8c of the parties' Strategic Partnership

_____

[1] The tribunal wrote in its Interim Award, "Except for determining attorneys' fees, costs, arbitrator fees, and expenses for which this tribunal is reserving jurisdiction, this Interim Award resolves all other claims between the parties submitted for decision in this proceeding[]."

1

Agreement of November 26, 2021 [hereinafter the "Agreement"].  That provision provides, in pertinent part:

> The Party filing a claim or counterclaim in the arbitration proceeding shall pay the deposit(s) determined by JAMS with respect to such claim or counterclaim.  All other costs associated with the arbitration and imposed by JAMS shall be paid as determined by the arbitrator(s) and, in absence of such determination, equally by each Party to the arbitration.  In addition*, unless the arbitrator awards payment of reasonable attorneys'* and other *fees to a Party, each Party to the arbitration shall be responsible for its own attorneys' fees* and other professional fees incurred in connection with the arbitration…. [emphasis added]

Claimant contends that the above provision imbues the tribunal with the discretion to award Claimant its attorneys' fees incurred during this arbitration.  Claimant seeks an aggregate amount of $55,581.25[2]  in fees and urges the tribunal to "shift attorneys' fees and costs to Respondent because it would be reasonable under the circumstances…."  In support of its position, Claimant points out that Respondent failed to meet discovery deadlines; failed to timely respond to discovery; and, otherwise acted in a cavalier manner during the arbitration.

The tribunal finds that throughout this arbitration, Claimant's counsel, Daniel J. Simon and Bibiana Pesant, demonstrated professionalism and competency.  Further, they achieved and maintained exceptional qualifications (educational and professional) and were always fully prepared to address all issues before the tribunal.  In addition, they fully comported with the finest traditions of the Florida Bar.  The tribunal has no qualms or reservations regarding their able representation of their client.  Notwithstanding, before addressing any amounts Claimant may be entitled to as attorneys' fees, the tribunal must first address the issue of whether Claimant is entitled to attorneys' fees pursuant to terms of the Agreement.

Generally, attorney's fees are not awardable unless authorized by statute or contract.  See, *Cadenhead v. Gaetz*, 677 So.2d 96, 97 (Fla. 1st DCA 1996) ("Generally, attorney's fees are not awarded unless authorized by statue or contract.").  In the present dispute, Claimant is not seeking fees pursuant to statute, but rather pursuant to the Agreement.

In *Columbia Bank v. Columbia Developers, LLC*, 670, 673 (Fla. 1st DCA 2013), the First District Court of Appeal wrote, "The cardinal rule of contractual construction is that when the language of the contract is clear and unambiguous, the contract must be interpreted and enforced

---

[2] Claimant seeks attorneys' fees for the work performed by Daniel J. Simon (33.6 hours at the rate of $500 per hour) and Bibiana Pesant (91.25 hours at the rate of $425.00 per hour).

in accordance with its plain meaning."   A court is not authorized to rewrite a clear and unambiguous contract to make it more reasonable for one of the parties. See, *Snyder v. Florida Prepaid College Board*, 269 So.3d 586, 592 (Fla. 1st DCA 2019).

The right of a party to recover contractual attorney's fees is limited by the terms of the provision. *B&H Construction & Supply Co., Inc. v. District Board of Trus*tees *of Tallahassee Community College, Florida*, 542 So.2d 382, 386 (Fla. 1st DCA 1989).  Indeed, courts must strictly construe a contractual attorney's fee provision. *Id.*

The tribunal notes that the Agreement does not require Claimant to be the "prevailing party" in the arbitration as a condition to it being entitled to fees.  *See,* Id. at 387 (The contractual attorney's fee provision did not contain the term "prevailing party".  Instead, the provision required a finding that one of the parties breached the contract for the non-breaching party to recover attorney's fees.).  However, "if an agreement for one party to pay another party's attorney's fees is to be enforced it must unambiguously state that intention and clearly identify the matter in which the attorney's fees are recoverable."  *Sholkoff v. Boca Raton Community Hospital, Inc*., 693 So.2d 1114, 1118 (Fla. 4th DCA 1997).  Should the agreement be ambiguous, "the court will not struggle by construction of the language employed to infer an intent for fees that has not been clearly expressed; nor will it allow intentions to indemnify another's attorney's fees to be ambiguously stated and then resolved by the finder of fact."  Id.

The attorney's fee provision in *B&H Construction*, supra., is similar to the language in the parties' Agreement to the extent that neither attorney's fee provision references the term "prevailing party."  Where the present case and *B&H Construction*, Id., diverge is that the Agreement's provision does not require the tribunal to make a finding that one of the parties breached the contract in order to recover fees.

The provision that Claimant contends affords the tribunal the discretion for it to award attorney's fees against Respondent is at best ambiguous.  The provision's terms contemplate that each party will be responsible for its own attorneys' fees incurred in connection with the arbitration.  The expressed exception to this presumption is that the arbitrator can award payment of reasonable attorneys' and other fees to a party.  The provision is silent with respect to when it can make an award of attorneys' fees.  Is it when a statute authorizes fees to be awarded to a prevailing party on all or some issues or causes of action? Are fees authorized when the tribunal makes a specific finding or findings of some kind?  In short, the Agreement's subject provision

provides the tribunal with no guidance or standards under which fees can be awarded.  The provision, as written, gives the tribunal blanket discretion without any direction as to when fees should be, could be, or shall be awarded or declined.  It seems the provision is left open to the whim or capriciousness of the arbitrator, and without any rigors, instruction, suggestions or assistance.  What could be more ambiguous?

For the reasons stated herein, Claimant's request for attorneys' fees pursuant to the Agreement is DENIED.

### 2.  Costs

Claimant seeks reimbursement for costs in the sum of $70.18.[3]  At the outset, the term "costs" is not generally construed to include attorney's fees absent an express contractual provision that defines expenses to include fees except when a statute or contractual agreement defines costs to include attorney's fees."  See, *Rose Printing Company v. Wilson*, 602 So.2d 600,603 (Fla. 1st DCA 1992).  The tribunal finds that costs are neither "attorneys' fees" nor "professional fees."

Paragraph 8c of the Agreement provides, in apposite part:

…All other costs associated with the arbitration and imposed by JAMS shall be paid as determined by the arbitrator(s) and, in absence of such determination, equally by each Party to the arbitration….

The tribunal finds that Claimant is entitled to $70.18 in costs.  Further, said cost were reasonable and necessarily expended to further Claimant's cause of action during this arbitration.  Accordingly, Claimant's requests for costs is GRANTED.

### 3.  Pre-judgment Interest

Claimant has not sought pre-judgment.  Accordingly, the tribunal cannot make an award of the same, even if it were applicable.

### 4.  Re-imbursement of Claimant's Deposits with JAMS

Claimant seeks $8,150.00 for reimbursement from Respondent for the deposits Claimant made on behalf of Respondent with JAMS.  The tribunal respectfully declines to award

---

[3] According to Claimant, "These costs consisted of two charges on August 24, 2022 of $5.44 for correspondence went to Respondent via certified mail, in compliance with the Agreement's Section 8(d), and one charge on February 13, 2023 of $59.30 for exhibit binders created in anticipation of the final hearing…."

this sum to Claimant and directs Claimant to the tribunal's Order on Respondent's Request to Determine Responsibility for Arbitration Fee Deposit for an explanation of this decision.

## **FINAL AWARD**

1. The Interim Award dated March 3, 2023, is incorporated herein.

2. Based upon the categories of damages demanded, and as memorialized in Interim Award and herein, Claimant is entitled to recover the following that will reasonably and fairly compensate him for his injury Damages awardable to Claimant:

| | |
|---|---|
| Damages awardable to Claimant | $ 400,000.00 |
| Attorneys' Fees | 0 |
| Reimbursement of Arbitrator Fees | 0 |
| Costs | 70.18 |
| **FINAL AWARD** | **$ 400,070.18** |

3. Claimant is entitled to a credit against the **$400,070.18** upon adequate proof that Respondent actually paid any money to Claimant towards the $400,000.00. To be considered for a credit, all payments shall have been made subsequent to the entry of the tribunal's Interim Award of March 3, 2023.

4. This Final Award addresses all claims submitted to this tribunal. Any issue or issues not specifically discussed or addressed in the tribunal's Interim Award of March 3, 3023 or in this Final Award are deemed to be without merit.

DATED: April 12, 2023

Hon. Scott J. Silverman
Arbitrator

5